BEVERLY L. GRIMM *v.* ROBERT L. GRIMM
(AC 22315)

Foti, Bishop and Dupont, Js.

Argued October 16—officially released December 31, 2002

*Thomas P. Puccio*, pro hac vice, with whom were *John Wayne Fox* and, on the brief, *Patricia M. Gaug*, for the appellant (defendant).

*Gaetano Ferro,* with whom was *Norman A. Roberts II,* for the appellee (plaintiff).

BISHOP, J. The tortured history of this case demonstrates the detrimental effect that procedural dysfunction in a marital dissolution action can have on the judicial process.[1] The specific questions presented in this appeal are whether the court improperly (1) refused to vacate the plaintiff's withdrawal of the action and (2) declined to restore the case to the docket to permit the defendant to seek counsel fees. We affirm the judgment of the trial court.

Reasonable discussion of those issues requires a cursory review of the court's voluminous file. This marital dissolution action was commenced in the judicial district of Stamford-Norwalk by complaint dated August 25, 1997, and initially claimed to the trial list on December 8, 1997. Trial of the matter was scheduled to commence on June 10, 1998, July 30, 1998, December 15, 1998, March 16, 1999, July 20, 1999, May 16, 2000, and July 7, 2000; on each of those dates, the trial was continued. It thereafter was set for trial on September 12, 2000.

The transcript of the September 12, 2000 proceeding indicates that when the defendant's counsel stated that he was not prepared for trial on that day, the court commented: "This case has been marked on trial. The request for a continuance became moot yesterday, and we're ready to proceed." In response to the request for a continuance by the defendant's counsel, the court

---

[1] The computer printout in the trial court file indicates that from the inception of this action until this appeal, there were 151 notations, most of which concerned discovery requests, objections to them, various contempt motions, multiple requests for continuances filed by the defendant, Robert L. Grimm, and various motions concerning anticipated trial witnesses. The file also indicates that this action has been the subject of two interlocutory appeals, both dismissed for lack of finality, and that counsel for one of the parties claimed the matter to the jury.

stated: "That's not an excuse. If you don't have it prepared, that's your problem. You've been on notice. This is now one of the oldest cases in the [judicial district]. It's on trial. Now, that's all there is to it. You're on trial."

After further colloquy with counsel, the court stated: "We're on trial. I want to get this case going." When the defendant's counsel persisted in his argument that it would not be reasonable to commence evidence on that date, the court relented, in part, but indicated its intention to give the case an on trial status so that both counsel would be insulated from the demands of other courts. To effectuate that proposition, the court had the plaintiff take the witness stand. The court stated to the plaintiff: "Would you come up here, Mrs. Grimm, to the witness stand? And then it will be on trial." Once the plaintiff had been sworn in and had testified as to the date of the marriage, the court stated: "All right. We're going to suspend, as we've already discussed. I won't review it again. You heard it all."

The trial then was continued to September 21, 2000, at 9:30 a.m., but for reasons not clear from the record, the trial did not resume on September 21, 2000. The parties were next in court on December 12, 2000, when the court heard evidence concerning contempt motions filed by the plaintiff. That hearing continued through December 13, 2000, and was scheduled to resume on December 14, 2000. When the parties returned on December 14, however, the plaintiff brought to the court's and the defendant's attention that she had withdrawn the action at the end of the day on December 13. The court then concluded that there was nothing else to do.

On the next day, the plaintiff commenced a marital dissolution action in the judicial district of Danbury. After the defendant attempted unsuccessfully to have the Danbury action dismissed or transferred to Stam-

ford, he filed two motions in this matter, both dated April 12, 2001, one seeking to have the withdrawal vacated, and the other to have the case restored to the docket for the purpose of seeking counsel fees incurred in defending the plaintiff's motions for contempt.[2] It is from the denial of those motions that the defendant has appealed. We affirm the judgment of the trial court.

I

The defendant first claims that the court improperly allowed the plaintiff to withdraw her complaint without leave of the court, as is required by General Statutes § 52-80, after the commencement of a hearing on the merits. We agree, but hold that the issue is moot.

General Statutes § 52-80 provides in relevant part: "The plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any action, the plaintiff may withdraw such action . . . only by leave of court for cause shown." See also *Smith* v. *Reynolds*, 54 Conn. App. 381, 383, 735 A.2d 827 (1999).

The issue in this case is whether the court improperly determined that the plaintiff did not need permission to withdraw her action in accordance with § 52-80. Pivotal to that determination is the question of whether the court had commenced a hearing on an issue of fact in the marital dissolution action. If it had, then by operation of § 52-80, the action could not be withdrawn without the court's permission. Implicit in the court's

---

[2] Although that determination is adequate to dispose of the claim under General Statutes § 52-80 in this case, we note that prior to September 12, 2000, the court had, in fact, conducted pendente lite hearings on interim contested matters. Consistent with the purpose of § 52-80 to prevent a party from unilaterally withdrawing an action once it has engaged the court, we believe that a better understanding of § 52-80 in the marital dissolution context is that its provisions apply anytime after the court has conducted a hearing on any contested issue, including a pendente lite hearing.

ruling was its determination that prior to the filing of the withdrawal, the court had not commenced a hearing on an issue of fact in the action. We disagree.

In its memorandum of decision regarding the defendant's motion to vacate the plaintiff's withdrawal, the court noted: "No evidence had been elicited from any witness in support of any allegation contained in the plaintiff's complaint. The court finds that the commencement of a hearing on the merits of the plaintiff's complaint did not take place." That finding was improper.

A review of the transcript of the September 12, 2000, proceeding indicates that when the plaintiff was called to testify, she gave the date of the marriage as set forth in the complaint. Additionally, the trial court file reflects that the case had been assigned for trial on that date. Thus, no matter how brief, the plaintiff's testimony signified the commencement of a hearing on the merits of her complaint. The court's further observation to the effect that the purpose of commencing the hearing was to give counsel an "on trial" status is legally insignificant. The reason for the commencement of the hearing is not relevant to the application of § 52-80.[3]

Having determined that the court improperly determined that the provisions of § 52-80 were inapplicable, we next turn to the question of relief. At oral argument, the defendant conceded that he would not want the eventual dismissal of the Danbury action that could be triggered by this court's reversal of the trial court's

---

[3] Although that determination is adequate to dispose of the claim under General Statutes § 52-80 in this case, we note that prior to September 12, 2000, the court had, in fact, conducted pendente lite hearings on interim contested matters. Consistent with the purpose of § 52-80 to prevent a party from unilaterally withdrawing an action once it has engaged the court, we believe that a better understanding of § 52-80 in the marital dissolution context is that its provisions apply anytime after the court has conducted a hearing on any contested issue, including a pendente lite hearing.

denial of his motion to vacate the plaintiff's withdrawal. See *Nielsen* v. *Nielsen*, 3 Conn. App. 679, 682, 491 A.2d 1112 (1985) (prior pending action doctrine permits court to dismiss second case that raises issues currently pending before court). As well, the defendant acknowledged at oral argument that this would not promote judicial economy by having repetitive litigation. We agree. It is our understanding from counsel that the Danbury action recently was concluded and that the parties await the court's decision. Under those unique circumstances, no useful purpose would be achieved by our reversal of the trial court's decision. We consistently have held that "[w]hen . . . events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Brown* v. *Brown*, 69 Conn. App. 209, 212, 794 A.2d 550 (2002).

Accordingly, although the refusal of the court to vacate the withdrawal was improper, we find that the issue has been made moot by the subsequent proceedings in the judicial district of Danbury.

## II

The defendant's second claim is that the court abused its discretion by failing to restore the case to the docket. We disagree.

At the outset, we note that the decision whether to restore a case to the docket invokes the court's discretionary authority. *Marshall* v. *Marshall*, 71 Conn. App. 565, 572, 803 A.2d 919, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002); *Sicaras* v. *Hartford*, 44 Conn. App. 771, 779, 692 A.2d 1290 ("whether a case should be restored to the docket is one of judicial discretion"), cert. denied, 241 Conn. 916, 696 A.2d 340 (1997).

We are mindful that the defendant's motion to restore the case to the docket was dated April 12, 2001, approxi-

mately four months after the withdrawal, and that the Danbury action had been pending for nearly as long. Additionally, although, as the defendant correctly claims, the court could have restored the case to the docket for the sole purpose of awarding the defendant counsel fees in conjunction with the plaintiff's motions for contempt, at the time of the withdrawal, the court had not concluded the contempt hearing and, accordingly, had not made any findings on the then pending contempt motions. Under those circumstances, the court did not abuse its discretion in denying the motion to restore.

The judgment is affirmed.

In this opinion the other judges concurred.